**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DAMION K. WEST, *et al*.,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 1:22-cv-03107-CRC** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**</u>

**INTRODUCTION**

Plaintiffs Damion K. West, Damani Batchler, and Mr. Nice Guys LLC challenge the allegedly prolonged retention of United States currency seized from two Mr. Nice Guys LLC stores by the Metropolitan Police Department (MPD). The currency at issue was seized during the execution of two search warrants, neither of which Plaintiffs challenge. Plaintiffs bring Fourth and Fifth Amendment claims under 42 U.S.C. § 1983 and a common law claim challenging the government's retention of this currency. Because Plaintiffs cannot state a claim under the Fourth Amendment based on the prolonged retention of lawfully seized property, those claims should be dismissed. Plaintiffs' Due Process claims should also be dismissed because Plaintiffs did not avail themselves of a constitutionally sufficient and available procedure to seek the return of their seized property. And because the seizure of Plaintiffs' property was an exercise of the government's police power authorized by valid search warrants, Plaintiffs cannot state a claim under the Takings Clause. Lastly, Plaintiffs' claim for "unlawful detention" of their property should be dismissed because that is not a recognized tort under District of Columbia common law.

## BACKGROUND

Plaintiff Mr. Nice Guy LLC operates several retail stores in the District, and Plaintiffs Damion West and Damani Batchler are Mr. Nice Guy employees. *See* Compl. ¶¶ 10-12. According to the Complaint, on August 20, 2021, MPD conducted two searches pursuant to search warrants at Mr. Nice Guy LLC stores. *Id.* ¶¶ 14, 28. One search occurred at a store located at 1922 9th Street NW (the 9th Street store) and the other occurred at a store located at 409 8th Street SE (the 8th Street store). *Id.* ¶¶ 14, 28.

During the search at the 9th Street store, MPD officers allegedly seized $67,677.69 of United States currency belonging to Mr. Nice Guys LLC from Plaintiff Damion K. West. *Id.* ¶ 17. Plaintiffs contend that this currency was not listed on the inventory of seized items on the return for the search warrant. *Id.* ¶ 16. The United States Attorney's Office (USAO) purportedly declined to charge any individuals who were arrested during the search of the 9th Street store. *Id.* ¶ 19. Plaintiffs allege that their counsel has contacted the USAO and multiple MPD departments seeking the return of the seized $67,677.69, but that the seized currency has not been returned. *Id.* ¶¶ 20–26.

During the search at the 8th Street store, MPD officers allegedly seized $6,289 in United States currency belonging to Mr. Nice Guys LLC from Plaintiff Damani Batchler. *Id.* ¶ 29. The USAO filed charges against Mr. Batchler in Case No. 2021 CMD 004743 in the Superior Court of the District of Columbia. *Id.* ¶ 30. Mr. Batchler entered into a Deferred Prosecution Agreement and, after he satisfied his obligations under that agreement, the case was dismissed. *Id.* ¶ 31. On September 13, 2022, the District of Columbia filed a petition to hold or impose conditions on property held for forfeiture concerning the $6,289 in question. Docket, *District of Columbia v. Batchler*, Case No. 2022 CA 004154 2. On November 7, 2022, the District filed a libel of information related to this currency. *See* Docket, *District of Columbia v. Six Thousand*

*Two Hundred and Eighty-Nine Dollars ($6,289.00) in U.S. Currency*, Case No. 2022 CAB 005082.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. "[A] complaint [does not] suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration omitted).

## ARGUMENT

Plaintiffs assert four causes of action under 42 U.S.C. § 1983 against the District, alleging that the District's retention of their property violated the Fourth and Fifth Amendments. To state a claim for municipal liability under Section 1983, a plaintiff must allege both an underlying constitutional violation and "a custom or policy of the municipality [that] caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978)). Plaintiffs' constitutional claims all fail at both steps. Plaintiffs also bring one claim under District common law, but the claim they assert is not a recognized tort; nor would the facts alleged state a claim for any tort that is recognized at common law.

I.     **Plaintiffs Fail to Allege a Constitutional Violation.**

Plaintiffs contend that the District's allegedly prolonged retention of their property violated the Fourth Amendment, violated their procedural due process rights under the Fifth Amendment, and constituted an unlawful taking under the Fifth Amendment.[1]  Compl. ¶¶ 34–56.  Pertinent to each of these constitutional claims, there is an ongoing civil forfeiture proceeding related to the currency seized from the 8th Street store.  *See District of Columbia v. Batchler*, Case No. 2022 CA 004154 2 (filed Sept. 13, 2022); *District of Columbia v. Six Thousand Two Hundred and Eighty-Nine Dollars ($6,289.00) in U.S. Currency*, Case No. 2022 CAB 005082 (filed Nov. 7, 2022).  Plaintiffs do not address this forfeiture proceeding in their Complaint, *see* Compl. ¶¶ 32–33, but this Court may take judicial notice of these public records, *see Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1088 (D.C. Cir. 2007).  Before this case was filed, Judge Mitchell-Rankin issued an order finding that the District had shown probable cause that this property was subject to forfeiture and that the District was authorized to hold it throughout the pendency of the libel proceedings.  Exhibit A, Order, *District of Columbia v. Batchler*, 2022 CA 4154 2 (Sept. 27, 2022).[2]  As discussed further below, the ongoing forfeiture process and this order are fatal to Plaintiffs' constitutional claims related to the currency seized from the 8th street store.

A.     **Plaintiffs Fail to Plausibly Allege a Fourth Amendment Claim (Count 1).**

---

[1]     Plaintiffs' Complaint also references a substantive due process and equal protection claim, Compl. ¶ 1, but neither claim appears as a Count in the Complaint and Plaintiffs do not describe a claim under either theory.  To the extent Plaintiffs intend to state a substantive due process or equal protection claim, they have failed to do so.

[2]     In accordance with District forfeiture law and this order, the District filed a libel of information on November 7, 2022.  *See* D.C. Code § 41-307.

A challenge to the retention of lawfully seized property does not sound in the Fourth Amendment.  Plaintiffs allege that "a seizure that is lawful at its inception may nevertheless violate the Fourth Amendment if the manner of its execution or its duration unreasonably infringes the possessory interests protected by the Fourth Amendment."  Compl. ¶ 35.  But "'[w]here an initial seizure of property was reasonable,' the government's 'failure to return the items does not state a separate Fourth Amendment claim of unreasonable seizure.'"  *Bennett v. Dutchess Cty.*, 832 Fed. App'x 58, 60 (2d Cir. 2020) (quoting *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004) (alterations omitted)).  At least four circuit courts have held that claims challenging the retention of lawfully seized property, like Plaintiffs' claims here, do not implicate the Fourth Amendment.  *See Shaul*, 363 F.3d at 187 ("To the extent the Constitution affords . . . any right with respect to a government agency's retention of lawfully seized property, it would appear to be procedural due process."); *Denault v. Ahern*, 857 F.3d 76, 84 (1st Cir. 2017) ("[T]o the extent a plaintiff may challenge on federal constitutional grounds the government's retention of personal property after a lawful initial seizure . . . that challenge sounds in the Fifth Amendment rather than in the Fourth Amendment."); *Lee v City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003) (holding that the Fourth Amendment "cannot be invoked by the dispossessed owner to regain his property" after a lawful initial seizure); *Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999); *see also Gilmore v. City of Minneapolis*, 837 F.3d 827, 838 (8th Cir. 2016) ("[I]f the seizure was valid, we doubt [plaintiff] can assert a Fourth Amendment claim over the sign's destruction."); *Brown v. District of Columbia*, 115 F. Supp. 3d 56, 63 (D.D.C. 2015).[3]

---

[3]     The Ninth Circuit held in *Brewster v. Beck* that a claim challenging the 30-day impoundment of a lawfully retained vehicle sounded in the Fourth Amendment. 859 F.3d 1194, 1197 (9th Cir. 2017).  *But see Jessop v. City of Fresno*, 936 F.3d 937, 943 (9th Cir. 2019)

The Fourth Amendment's protection of property interests "is limited to the breadth of the meaning of the word 'seizure' in the Fourth Amendment." *Fox*, 176 F.3d at 350. In this context, a seizure of property occurs when "there is some meaningful interference with an individual's possessory interest in that property." *Id.* (quoting *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992)). The Fourth Amendment's protection against "'meaningful interference with a possessory interest' . . . is limited to an individual's interest in *retaining* his property." *Lee*, 330 F.3d at 466 (emphasis in original). Once the act of taking the property has occurred, the seizure is complete and the Fourth Amendment is no longer the relevant constitutional amendment. *Fox*, 176 F.3d at 351; *see also Lee*, 330 F.3d at 466 ("Once an individual has been meaningfully dispossessed, the seizure is complete, and once justified by probable cause, that seizure is reasonable.").[4] "[T]he core of past Fourth Amendment jurisprudence would no[t] . . . be relevant" to an analysis of when and how property should be released. *Lee*, 330 F.3d at 465. Here, Plaintiffs do not challenge the initial seizure of their property and only challenge its retention, which they contend became unreasonable after investigations were terminated and criminal cases were dismissed or not prosecuted. Compl. ¶ 36.

---

(Milan, J., concurring) ("*Brewster*'s reasoning appears to conflict with the Supreme Court's jurisprudence on Fourth Amendment seizures . . . [and] also conflicts with that of several other circuits, which have concluded that the Fourth Amendment provides protection only against the initial taking of property, not its continued retention.").

[4]     A few cases in this district have analyzed prolonged retention of property under the Fourth Amendment but those cases did not discuss the circuit caselaw holding that there is no Fourth Amendment claim to challenge the retention of property itself. *See Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25 (D.D.C. 2019); *Avila v. Dailey*, 246 F. Supp. 3d 347, 357 (D.D.C. 2017). *But see Cameron v. District of Columbia*, Civil Action No. 21-2908, 2022 U.S. Dist. LEXIS 154589, at *17 (D.D.C. Aug. 29, 2022), *appeal docketed*, No. 22-7130 (D.C. Cir. Sept. 30, 2022) (considering circuit caselaw and finding no Fourth Amendment claim based on prolonged retention of property).

United States v. Place, 462 U.S. 696 (1983) and United States v. Jacobsen, 466 U.S. 109 (1984) are consistent with this circuit caselaw. In Place, the Supreme Court considered whether law enforcement could briefly detain luggage without probable cause for the purposes of further investigation. 462 U.S. at 706–09. The Place court held that, if a deprivation of property becomes sufficiently significant, then an investigatory detention becomes a seizure that requires probable cause. Id. at 708–09. As explained in Lee, "Place is ultimately concerned only with the initial loss of [the] possessory interest and whether the existence of probable cause renders that loss reasonable" and "has no application after probable cause to seize has been established." 330 F.3d at 464.

In Jacobsen, the Supreme Court considered whether an initially reasonable seizure's manner of execution "unreasonably infringe[d] possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures' . . . by destroying a quantity" of the property at issue and converting "a temporary deprivation of possessory interests into a permanent one." 466 U.S. at 124–25. The "manner of execution" of the seizure considered in Jacobsen—an investigatory test that destroyed some of the property at issue—is significantly different than Plaintiffs' claims challenging the allegedly prolonged retention of their property after it was seized pursuant to a search warrant. Place and its progeny do not support Plaintiffs' claim that a challenge to the retention of property after it has been lawfully seized can be brought under the Fourth Amendment. As Plaintiffs have only challenged the retention of their property, and not the seizure of the property, they have not stated a claim under the Fourth Amendment.

Even if Plaintiffs could state a claim under the Fourth Amendment based on the retention of property, Plaintiffs have failed to plausibly allege that their property was unlawfully retained. The "Fourth Amendment's touchstone is reasonableness." Barnes v. District of Columbia, 793

7

F. Supp. 2d 260, 287 (D.D.C. 2011).  The property at issue was seized pursuant to search warrants that authorized the seizure of currency.  Compl. ¶ 5.  Under District law, "a judicial officer may issue a search warrant upon application of a law enforcement officer or prosecutor" and "may direct the seizure of designated property or kinds of property."  D.C. Code § 23-521.

As discussed above, the currency seized from the 8th Street store is currently the subject of forfeiture proceedings and being held pursuant to a court order; Plaintiffs have not plausibly alleged that the retention of this property is constitutionally unreasonable.  With respect to the currency seized from 9th Street store, Plaintiffs have not plausibly alleged that it was unreasonably retained.  Plaintiffs contend that the retention of their property became unreasonable "after investigations were terminated," Compl. ¶ 36, but do not make factual allegations to support that any investigation related to the 9th Street store was in fact terminated. Plaintiffs allege only that an Assistant United States Attorney (AUSA) advised Plaintiffs' counsel that "he did not believe any charges were brought as a result of that warrant."  *Id.* ¶ 21. Even assuming the veracity of that allegation, Plaintiffs offer no facts to suggest that charges are not forthcoming or that an investigation to support future charges is not ongoing.  Nor is it reasonable to infer as much from the fact of counsel's alleged conversation with the unidentified AUSA.  Indeed, District law provides that once property is seized pursuant to a search warrant, it shall not "be released or destroyed except in accordance with law and upon order of a court or of the United States attorney or . . . [Attorney General for the District of Columbia] or one of their assistants."  D.C. Code § 23-525.  Plaintiffs do not allege that the court or an appropriate person has authorized the release of the currency seized from the 9th Street store.  *Cf.* Compl. ¶ 32 (alleging that AUSA submitted a PD 81-C form related to the currency seized from the 8th Street

store).  Plaintiffs have thus failed to plausibly allege that this property is being unreasonably

retained.

**B.**     **Plaintiffs Fail to Allege a Violation of Their Procedural Due Process Rights (Counts 2 and 3).**

Counts 2 and 3 of the Complaint both allege that the District violated Plaintiffs'

procedural due process rights by failing to provide prompt post-seizure hearings.  Compl. ¶¶ 40,

45.  Count 3 is styled as the "[r]ight to return of property," but otherwise repeats allegations

made in Count 2, *see id.* ¶¶ 38-47, and can thus be dismissed as duplicative.[5]  Count 2 also

includes an allegation that the District did not provide Plaintiffs with constitutionally required

notice of the available procedures.  *Id.* ¶ 41.  Because Plaintiffs could have sought the return of

their property through Superior Court Rule 41(g), both claims fail.

**1.**     **Plaintiffs Fail to Allege a Claim Based on a Purported Lack of Notice (Count 2).**

In Count 2, Plaintiffs contend that the District did not "give them notice of such prompt

post seizure hearings in violation of their procedural due process rights."  Compl. ¶ 41.

However, notice relating to the seizure of property is sufficient if it is contained in publicly

available documents.  *City of West Covina v. Perkins*, 525 U.S. 234, 241 (1999).  Here, the

---

[5]     While Count 3 is styled as the "Right to Return of Property when No Longer Needed by the District," the allegations are nearly identical to allegations made in Count 2.  *Compare* Compl. ¶¶ 39–40 *with* Compl. ¶¶ 44–45.  The only additional contention in Count 3 is that the District was deliberately indifferent in failing to provide post-seizure hearings, but Plaintiffs make no allegations to support this theory of municipal liability and do not identify a specific theory of municipal liability in Count 2.  *See id.* ¶ 46.  "Claims are duplicative when they stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available."  *WMI Liquidating Tr. v. Fed. Deposit Ins. Corp.*, 110 F. Supp. 3d 44, 59 (D.D.C. 2015) (internal quotation omitted) (dismissing a count because it "does not present any legal or factual theories that are not already subsumed in [another count]"); *accord Husain v. Smith*, Civil Action No. 15-708, 2016 U.S. Dist. LEXIS 110610, at *11 (D.D.C. Aug. 19, 2016) (dismissing claim as duplicative).

procedures for seeking return of property seized pursuant to a search warrant are publicly available both in Rule 41(g) and caselaw.  Therefore, the notice portion of Count 2 should be dismissed.

In *Perkins*, the U.S. Supreme Court specifically addressed "the obligation of the State to provide fair procedures to ensure return of the property when the State no longer has a lawful right to retain it."  525 U.S. at 240.  The plaintiffs in *Perkins* argued that they had been denied due process because the government "fail[ed] to provide them notice of their remedies and the factual information necessary to invoke the remedies under California law."  *Id*.  The Supreme Court rejected the plaintiffs' claim, explaining that when "state-law remedies . . . are established by published, generally available state statutes and case law[,]" a property owner "can turn to these public sources to learn about the remedial procedures available to him."  *Id.* at 241; *see also Dukore v. District of Columbia*, 970 F. Supp. 2d 23, 32 n.7 (D.D.C. 2013) ("The Fifth Amendment does not require the defendants to notify the plaintiffs of these [post-deprivation] procedures.") (citing *Perkins*, 525 U.S. at 241).

Here, Plaintiffs acknowledge the existence of Rule 41(g), but contend that the procedures it affords are inadequate.  *See* Compl. ¶ 27.  Plaintiffs' concession should compel dismissal of their claim that they received inadequate notice.

## 2.    Plaintiffs Did Not Avail Themselves of an Available, Constitutionally Sufficient Procedure.

To the extent Plaintiffs' due process claim challenges the sufficiency of the procedures for seeking the return of seized property, their claim must fail because they did not avail themselves of available, constitutionally sufficient process.  "[T]o make out a violation of [procedural] due process, the plaintiff must show the Government deprived her of a 'liberty or property interest' to which she had a 'legitimate claim of entitlement,' and that 'the procedures

attendant upon that deprivation were constitutionally insufficient.'" *Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (alteration omitted)).  It is well-established that "a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies."  *Chavis v. Garrett*, 419 F. Supp. 3d 24, 38 (D.D.C. 2019) (quoting *New York State National Organization for Women v. Pataki*, 261 F.3d 156, 169 (2d Cir. 2001)).  As discussed above, there is an ongoing forfeiture proceeding related to the currency seized from the 8th Street store.  Plaintiffs do not address this forfeiture proceeding, but it provides Plaintiffs with an avenue to challenge the retention of that currency.

Plaintiffs also had a constitutionally adequate avenue to pursue the return of all the seized currency at issue through Superior Court Rule 41(g).  Rule 41(g) states that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."  "Rule 41(g) is a comprehensive scheme that provides a straightforward and adequate remedy—and one which avoids any constitutional deprivation." *Leyland v. Edwards*, 797 F. Supp. 2d 7, 10 (D.D.C. 2011); *see also Smith*, 387 F. Supp. 3d at 31 ("the process Rule 41(g) provides clears any constitutional bar").  Plaintiffs make no allegations that they attempted to avail themselves of this process, alleging only that Rule 41(g) was unavailable to seek the return of the currency seized from the 9th Street store in the absence of a related criminal proceeding.[6]  *See* Compl. ¶ 27.  However, nothing on the face of Rule 41(g)

---

[6]     Plaintiffs make no allegations to suggest that Rule 41(g) was unavailable to seek the return of the currency seized from the 8th Street store.

limits its applicability, and a conclusory assertion to the contrary cannot defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

The broad scope of Rule 41(g) and the Superior Court's equitable power to consider motions for the return of seized property have been repeatedly addressed in caselaw. *See Cameron*, 2022 U.S. Dist. LEXIS 154589, at \*23–32 (summarizing cases). In *Cousart v. Metro Transit Police Chief*, the Court held that "[u]nder D.C. Superior Court Rule of Criminal Procedure 41(g), [plaintiff] can move in the Superior Court for the return of property seized as part of a criminal action" and that the Superior Court has jurisdiction to hear a civil action "for the return of property seized in a case that was 'disposed of by *nolle prosequi*.'" 101 F. Supp. 3d 27, 29 (D.D.C. 2015) (quoting *Alleyne v. United States*, 455 A.2d 887, 888–89 (D.C. 1983)); *accord Alleyne*, 455 A.2d at 888–89 (finding that trial court had jurisdiction to entertain the plaintiffs' motion for return of property); *Wilson v. United States*, 424 A.2d 130, 132 (D.C. 1980) (holding that "the Superior Court has jurisdiction after a criminal trial to rule on a motion to return property which had been seized in connection with the prosecution").[7]

Further, Rule 41(g) is substantially identical to Federal Rule of Criminal Procedure 41(g).[8] District of Columbia courts "construe rules that are substantially identical to the corresponding federal rule in light of the meaning given to the federal rule." *Behradrezaee v.*

---

[7]    *See also Jenkins v. District of Columbia*, Civil Action No. 16-118, 2017 U.S. Dist. LEXIS 119157, at \*10 (D.D.C. March 28, 2017) ("Superior Court Rule of Criminal Procedure 41(g) enables property owners to challenge the seizure and retention of their belongings as evidence."); *Baird v. Holton*, 806 F. Supp. 2d 53, 58 (D.D.C. 2011) ("Plaintiff's contention that 'without a damages remedy under Bivens, he has no remedy for being deprived of his property,' is simply incorrect. The plaintiff may seek return of the property taken from him by filing a motion pursuant to Rule 41(g).") (citation omitted).

[8]    The only distinction between the two rules is that the federal rule requires motions filed under the rule to be filed in the district where the property was seized. *Compare* Fed. R. Crim. Pr. 41(g) *with* D.C. Super. Cr. R. Crim. P. 41(g).

*Dashtara*, 910 A.2d 349, 356 n. 8 (D.C. 2006) (citation omitted).  The Seventh Circuit has

described Federal Rule of Criminal Procedure 41(g) as "the proper means of obtaining the

return of property" held pursuant to a search warrant.  *In re Search of 2847 E. Higgins Rd.*, 390

F.3d 964, 967 (7th Cir. 2004).  Federal "Rule 41(g) is concerned with those whose property or

privacy interests are impaired by [a] seizure."  *United States v. Comprehensive Drug Testing,*

*Inc.*, 621 F.3d 1162, 1173 (9th Cir. 2010).  The "class of those aggrieved can be . . . much

broader" than criminal defendants.  *Id.; see also Harbor Healthcare Sys., L.P. v. United States*,

5 F.4th 593, 595 (5th Cir. 2021) (discussing pre-indictment Federal Rule 41(g) motion).  This

caselaw suggests that Rule 41(g) provides an avenue for individuals, such as Plaintiffs, to seek

the return of their property even in the absence of a criminal case and is the proper means of

challenging the retention of property held pursuant to a search warrant.

Because Rule 41(g) provides Plaintiffs with the post-seizure hearing that they seek in

Counts 2 and 3—and Plaintiffs did not avail themselves of that process—both counts should be

dismissed.  *See Dukore*, 970 F. Supp. 2d at 32 (noting the well-established principle that

"[w]here adequate post-deprivation state remedies are available, no cognizable constitutional

claim for procedural due process can be stated") (citation omitted); *see also Pataki*, 261 F.3d at

169; *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to

provide due process, a plaintiff must have taken advantage of the processes that are available to

him or her, unless those processes are unavailable or patently inadequate").

### 3.    Rule 41(g) Satisfies All Constitutional Requirements.

Even if Plaintiffs had exhausted the process available to them, any challenge to the

constitutional sufficiency of Rule 41(g) would still be without merit.  Because Rule 41(g) is a

"state procedural rule[ ]" that is "part of the criminal process," this Court should apply the test

identified by the Supreme Court in *Medina v. California*.  505 U.S. 437, 443 (1992).  Here, seizing evidence pursuant to a search warrant is a traditional function performed by MPD as part of the criminal process.  *Cf. Kincaid v. District of Columbia*, 854 F.3d 721, 726–27 (D.C. Cir. 2017).  The seizure of evidence needed for criminal investigation or prosecution is so inextricably intertwined with the criminal process that protections against unreasonable seizures are embodied in the Fourth Amendment.

Under *Medina*, "[a] rule of criminal procedure usually does not violate the Due Process Clause unless it (i) 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or (ii) 'transgresses any recognized principle of 'fundamental fairness' in operation.'"  *Kincaid*, 854 F.3d at 726 (quoting *Medina*, 505 U.S. at 445, 448) (applying *Medina* and holding that post-and-forfeit policy did not violate due process). Rule 41(g) clearly meets this standard.  As a procedural mechanism to allow individuals to seek the return of their property, Rule 41(g) does not offend any traditional principle of justice.  As discussed above, Rule 41(g) is substantially similar to Federal Rule of Criminal Procedure 41(g), the procedure to seek the return of property seized by the federal government.  Plaintiff has not, and cannot, allege that Rule 41(g) offends a traditional principle of justice or transgresses any recognized principle of fundamental fairness.  *See Kincaid*, 854 F.3d at 726–28.  Rule 41(g) satisfies *Medina* and Counts 2 and 3 should be dismissed.

Even if this Court analyzes Plaintiffs' due process claim under the three-part balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), Rule 41(g) survives scrutiny.  Under the *Mathews* framework, courts weigh three factors to determine what process is sufficient to meet the requirements of the Fifth Amendment:  (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Here, Plaintiffs have a significant interest in their property. However, the other two factors weigh decisively in favor of Defendant. A key consideration under the second *Mathews* factor is "the probable value, if any, of additional or substitute procedural safeguards." *Id.* at 335. Given the availability of a hearing under Rule 41(g), Plaintiffs would not benefit from additional, post-seizure procedures to challenge the retention of their property. The currency at issue here was seized pursuant to search warrants and a finding of probable cause, *see* D.C. Superior Court Rule 41(d), which limits the risk of erroneous deprivation. Given the low risk of erroneous deprivation of Plaintiffs' property, and the minimal value of additional safeguards where Plaintiffs could have challenged the seizure of their property by filing a motion under Rule 41(g), the second *Mathews* factor weighs in favor of the District. *See Cameron*, 2022 U.S. Dist. LEXIS 154589, at *36–37

The third *Mathews* factor concerns the District's interest in not providing additional procedures. Given the Plaintiffs' failure to identify what procedural protections they are seeking beyond a prompt post-seizure hearing, it is impossible for the District to address the proposed additional burden. However, given the procedural protections already available, any additional protections would impose an undue and unnecessary burden on the District. *Cf. Cameron*, 2022 U.S. Dist. LEXIS 154589, at *38 (a requirement that the District provide automatic evidentiary hearings for every individual before charges are filed would "significantly interfere with ongoing investigations and would force the government to routinely explain to courts why it continues to retain seized property"). Therefore, the third factor weighs heavily in favor of the District.

Even if the Court applies *Mathews* instead of *Medina*, Counts 2 and 3 must nonetheless be dismissed because the retention of property seized as evidence implicates important government interests.

### C.    Plaintiffs Fail to Allege a Taking of Their Property in Violation of Their Fifth Amendment Rights (Count 4).

In Count 4, Plaintiffs allege that the District violated the Takings Clause by retaining the seized currency at issue past the time needed to investigate the potential cases and to have the currency available as evidence.  Compl. ¶ 50.  The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. Amend. V.  Plaintiffs contend that the District took the seized currency "for a public purpose" because "[t]aking the cash to extract evidentiary value from it was a public use of that cash."  Compl. ¶¶ 51–52.  Plaintiffs further contend that the District "has not obtained the right to possess the Plaintiffs' cash using the mandated procedures for civil forfeiture."  Compl. ¶ 54. As detailed above, there are ongoing civil forfeiture proceedings in District of Columbia Superior Court related to the currency seized from the 8th Street store.  Plaintiffs' Takings claim related to the currency seized from the 8th Street store should be dismissed on that basis alone. *See Bennis v. Michigan*, 516 U.S. 442, 452 (1996); *Tate v. District of Columbia*, 627 F.3d 904, 909 (D.C. Cir. 2010), *cert. denied*, 179 L. Ed. 2d 1198 (2011).

But that is not all.  "The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."  *Bennis*, 516 U.S. at 45; *see also Tate*, 627 F.3d at 909.[9]  "[I]t is well-settled that a state's seizing and retaining property as part of a criminal

---

[9]    In a recent case, the Supreme Court emphasized that government-authorized invasions of real property are generally physical takings requiring just compensation, but that "many

investigation is not a 'taking' for a 'public purpose' under the Fifth Amendment, and thus does not give rise to a claim for just compensation." *Ostipow v. Federspiel*, 824 Fed. App'x 336, 341 (6th Cir. 2020); *see also Lech v. Jackson*, 791 Fed. App'x 711, 717 (10th Cir. 2019) ("when the state acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a taking for purposes of the Takings Clause"); *United States v. Davis*, 648 F.3d 84, 97 (2d Cir. 2011); *Amerisource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008); *United States v. $7,990.00 in U.S. Currency*, 170 F.3d 843, 845 (8th Cir. 1999). "[T]o allege a cognizable takings claim, a plaintiff must challenge action that would have been legal if only it had been compensated." *Lafaye v. City of New Orleans*, 35 F.4th 940, 943 (5th Cir. 2022).

Here, Plaintiffs' property was seized pursuant to search warrants. Plaintiffs do not challenge the validity of the search warrants and acknowledge that both search warrants authorized MPD to seize currency. *See* Compl. ¶ 5. Because Plaintiffs' property was lawfully seized pursuant to search warrants, Plaintiffs have not plausibly alleged a claim for a violation of the Takings Clause.

## II.    Plaintiffs Fail to Plausibly Allege a Theory of Municipal Liability.

"[U]nder 42 U.S.C. § 1983, municipalities can be held liable for constitutional violations committed by their employees only if a plaintiff shows that the municipality is the 'moving force' behind the constitutional violation, meaning that an 'official municipal policy of some nature caused a constitutional tort.'" *Hurd v. District of Columbia*, 997 F.3d 332, 337 (D.C. Cir.

---

government-authorized physical invasions will not amount to takings because they are consistent with longstanding background restrictions on property." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2079 (2021). In *Cedar Point*, the Court offered the example that there was a "recognized privilege to enter property to effect an arrest or enforce the criminal law under certain circumstances" and that 'government searches that are consistent with the Fourth Amendment and state law cannot be said to take any property right from landowners." *Id.* (citations omitted). The same logic applies to property seized pursuant to a lawful search warrant.

2021) (quoting *Monell*, 436 U.S. at 691).  The D.C. Circuit has identified four ways such an
official policy can be shown:  (1) the municipality adopts a policy that violates the Constitution;
(2) a "policy maker" within the government takes an unconstitutional action; (3) "the employees'
unconstitutional actions 'are so consistent that they have become a custom' of the municipality
of which the supervising policymaker must have been aware"; or (4) "deliberate indifference" to
the risk of constitutional violations.  *Id.* at 337 (quoting *Baker*, 326 F.3d at 1306) (alterations
omitted). Each theory of municipal liability has its own elements and, to survive a motion to
dismiss, "a plaintiff must plead the elements of the relevant type of municipal policy."  *Blue v.
District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015).  "If the plaintiff fails to identify the type
of municipal policy at issue, the court would be unable to determine . . . whether the plaintiff has
provided plausible support for her claim."  *Id.*  "[M]erely speculating that an unidentified policy
and uncorroborated practice or custom exists without providing any factual heft to support the
allegation is insufficient to state a claim under § 1983."  *Trimble v. District of Columbia*, 779 F.
Supp. 2d 54, 59 (D.D.C. 2011) (citations omitted).  Plaintiffs fail to plausibly allege a theory of
municipal liability for any of their claims.

      In the introduction of the Complaint, Plaintiffs generally allege that the District
"routinely and unlawfully holds cash seized from individuals who have been arrested—many of
whom are never charged with a crime—for months or even years past the point where the
government might have any continuing legitimate interest in retaining said cash while providing
no process to challenge that retention" and that this "policy, pattern, practice, or custom" violates
the Constitution.  Compl. ¶ 3.  Plaintiffs also make one introductory reference to the District's
purportedly "unconstitutional policies and practices."  *Id.* ¶ 2.  To the extent Plaintiffs intend to
allege municipal liability under a policy or custom theory of liability, Plaintiffs have failed to do

so.

In order to allege a policy theory of municipal liability, Plaintiffs would need to allege "the explicit setting of a policy by the government that violates the Constitution." *See Baker*, 326 F.3d at 1306; *see also Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 91 (D.D.C. 2011). Plaintiffs have identified no such explicit policy related to any of their constitutional claims.

To state a claim for liability based on a custom, a plaintiff must allege "concentrated, fully packed, precisely delineated scenarios" to support his allegations that such a policy or custom exists, *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988)), and that the custom is "pervasive," *Tabb v. District of Columbia*, 605 F. Supp. 89, 96 (D.D.C. 2009). Plaintiffs' bare allegation that MPD "routinely" retains currency in a way that violates the Constitution is plainly insufficient. *See Coleman*, 850 F.2d at 93 ("While no hard and fast rule exists for the number of examples [a plaintiff] would need to plead . . . the Court is confident that one example coupled with a conclusory allegation is insufficient to meet the plausibility standard.").

Plaintiffs allege that the District was deliberately indifferent to their rights by failing to provide prompt post-seizure hearings to seek the return of their property and by instituting the takings of their cash without providing compensation. Compl. ¶¶ 46, 55. But pleading municipal liability via deliberate indifference requires considerably more. To meet the pleading standard for deliberate indifference, "at a minimum, a plaintiff must identify the type of deliberate indifference that is being alleged and must also state its factual basis." *Page*, 999 F. Supp. 2d at 283 (internal quotation omitted). "Deliberate indifference is determined by analyzing whether the municipality knew or should have known of the risk of constitutional

violations[.]" *Baker*, 326 F.3d at 1307.  Plaintiffs do not identify a theory of deliberate

indifference and make no allegations to suggest that the District was aware of a risk of

constitutional violations and failed to act.  *See* Compl. ¶¶ 46, 55.  Plaintiffs have not plausibly

alleged a deliberate indifference theory of municipal liability—or any other theory of municipal

liability to support their claims under Section 1983.

### III.   Plaintiffs Common Law Claim for Unlawful Detention of Their Property (Count 5) Should Be Dismissed.

In Count 5, Plaintiffs bring a common law claim alleging that the detention of their

property constituted the tort of "unlawful detention of property."  Compl. ¶ 57.  Plaintiffs have

not identified a viable tort claim, and, even if they have, they fail to allege facts sufficient to

support such a claim.

Plaintiffs contend that the tort of unlawful detention applies "when a tortfeasor has

converted a chattel that has come back to the owner's possession, either through self-help,

judicial proceedings or otherwise, and when the conduct that deprived the owner of the use of a

chattel was not a conversion."  *Id*. ¶ 60.  The elements that Plaintiffs have identified—a

tortfeasor converted the chattel, the property was returned to the owner's possession, and the

conduct that deprived the owner was not a conversion—do not state any recognizable tort claim.

*Cf. Pearson v. Dodd*, 410 F.2d 701, 706 (D.C. Cir. 1969) (discussing conversion and trespass to

chattel); *Lewis v. Aderholt*, 203 A.2d 919, 922 (D.C. 1964) (discussing action in detinue

seeking the return of property that was allegedly wrongfully detained).  Plaintiffs have failed to

identify any authority for a tort of unlawful detention and have not identified the elements of a

viable tort claim.[10]

---

[10]   Plaintiffs state that "[w]here public officials 'unlawfully seize or hold a citizen's realty or chattels, recoverable by appropriate action at law or in equity . . . ,' the true owner may 'bring his possessory action to reclaim that which wrongfully withheld.'"  Compl. ¶ 59.  Plaintiffs appear

Even if Plaintiffs intended to plead the tort of conversion, they have failed to state a plausible claim.  The elements of conversion are "(1) an unlawful exercise, (2) of ownership, dominion or control, (3) over the personal property of another, (4) in denial or repudiation of that person's rights thereto." *Johnson v. McCool*, 808 F. Supp. 2d 304, 308 (D.D.C. 2011) (quoting *Gov't of Rwanda v. Rwanda Working Grp.*, 227 F. Supp. 2d 45, 62 (D.D.C. 2002)).  Plaintiffs have not plausibly alleged that the District unlawfully exercised control of the property at issue.  Plaintiffs allege that the currency at issue was seized pursuant to search warrants, Compl. ¶ 5, and do not challenge the validity of those search warrants.  With respect to the currency seized from the 8th Street store, the District has initiated forfeiture proceedings and currently holds the property pursuant to a court order.  *See* Exhibit A.  With respect to the currency seized from the 9th Street store, Plaintiffs have not alleged that there is a court order or an order from the USAO or the Attorney General for the District of Columbia authorizing the release of the currency.  As the currency was seized pursuant to a search warrant, Compl. ¶ 5, the property cannot be released without such an order, *see* D.C. Code § 23-525; Rule 41(f)(8).  Plaintiffs have not plausibly alleged that the District's exercise of control over the property was unlawful and, therefore, have not made out a conversion claim.

## CONCLUSION

For the foregoing reasons, the Court should grant the District's motion and dismiss Plaintiffs' Complaint with prejudice.

Dated: January 20, 2023.                                        Respectfully Submitted,

---

to be quoting *Land v. Dollar*, 330 U.S. 731 (1967), or its progeny.  In *Land*, the Supreme Court considered a jurisdictional question related to claims seeking the return of property from federal officers.  330 U.S. at 738.  The Court in *Land* held that the district court had jurisdiction to hear the "appropriate action at law or in equity" concerning the return of property, *id.*, but did not recognize a tort claim such as the one Plaintiffs allege here.

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Interim Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Equity Section, Civil Litigation Division

*/s/ Helen M. Rave*
HELEN M. RAVE [90003876]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 735-7520
Email: helen.rave@dc.gov

*Counsel for Defendant*